In the Matter of the Estate of FELIX S. QUINTANA, Deceased.

Surrogate's Court, New York County, March 4, 1936.

*White & Case,* for the petitioning executors, Edward Griffith and Bankers Trust Company.

*Alexander & Green,* for the Bankers Trust Company, as successor trustee under the ninth clause of the will of Oliver S. Carter, deceased.

*Orlando P. Metcalf,* general guardian of infants.

DELEHANTY, S. One of the parties to this accounting proceeding seeks a direction that the executors of this estate reserve out of the assets of the estate a sum to secure the contingent and unliqui-

dated claim of such party which is based upon an agreement of deceased whereunder he assumed payment of a mortgage debt. The mortgage secures the principal sum of $24,000. It is a lien upon premises 29 East Twenty-eighth street, Manhattan, New York city. The taxes upon such premises are fully paid. The interest upon such mortgage is fully paid. Because of the mortgage moratorium the mortgage, though extended only to October 1, 1932, cannot now be foreclosed. Deceased died December 14, 1932. His will was admitted to probate June 6, 1933. The mortgage moratorium statute became effective August 26, 1933. No action was taken upon the mortgage from its due date in October, 1932, up to the effective date of the mortgage moratorium. None could have been taken since.

The procedure outlined in *New York Life Insurance Co.* v. *Guttag Corporation* (265 N. Y. 292) for the ascertainment of the value of the real property was followed by the court. The physical location of the property was testified to by witnesses familiar with it. Its size and usable floor area were proved and the condition of the building was shown. The adaptability of the building to various uses was testified to, the assessment of the premises for land taxes was made part of the record and testimony was taken concerning the possible future uses to which the building could be devoted and to the current trend of the sale and rental market affecting the neighborhood generally and affecting in particular this specific piece of property. The experts called by the contesting parties differed as to their estimates of the value of the property. It was shown that the premises were assessed at $42,000 for the year 1935. Of this amount $35,000 was assessed as land value.

In determining whether a reserve shall be provided for a contingent and unliquidated claim this court has the right to make such inquiry as it deems proper in the fixation of the amount of liability; and of course may determine whether any reserve at all shall be made. If it determines that no reserve shall be made and thereafter it should eventuate that the security for the debt is not adequate there would seem to be a right of action against the distributees of the property for the deficiency as provided in article 7 of the Decedent Estate Law. In determining whether a reserve should be required consideration may properly be given to the decisions which deal with the effect of section 1083-a of the Civil Practice Act. These provisions relate of course to the entry of deficiency judgments in foreclosure actions but there is involved the same fundamental problem of determining what fairly should be done in a situation which forbids the ascertainment of the true value of property by the test of sales in a free market. It is matter

of common knowledge of which the court must take notice that there is no free market in real property at this time; that foreclosure sales notoriously produce no purchaser except the plaintiff in the proceeding or someone acting in his behalf; and that in the real estate market generally there is a corresponding lack of transactions which truly represent the value of the property involved. Here the contingent claim is based upon the prospect of a deficiency if the mortgaged premises are sold in foreclosure. So the cases dealing with section 1083-a of the Civil Practice Act are applicable.

Reference to some of these authorities discloses that the Supreme Court in such cases endeavors to ascertain the fair worth of the property while recognizing the lack of a market in which that fair worth can presently be realized. (*Farmers & Mechanics Savings Bank* v. *Eagle Building Co.*, 153 Misc. 544; *Central New York Mortgage & Title Company* v. *Williams*, 155 id. 376.) The Supreme Court apparently takes into account the assessed value for tax purposes. There seems to be some authority for this. (*Matter of Simmons*, 132 App. Div. 574.) The opinions expressed by the real estate experts are of course a subject for consideration.

The expert witness called by the claimant fixes a worth of $20,000 for the property. His testimony on the subject contains a statement of the formula by which he reached this result. His formula, however, seems not to have been applied to this particular property and to its income and his figures seem to have been based upon an erroneous concept of the actual terms of the lease of the property. The expert for the executors stated frankly that there was no market in which the value of the property could be realized today. He fixed a value of $30,000 or more for the property, which is only half of what the property was worth, he says, six years ago and materially less than what he says the property was worth before the real estate boom. He testified that with a capital expenditure of $5,000 the building, which is now substantially usable only by a single tenant and only to the extent of the lower floors, could be adapted to multiple use and would produce substantially increased rents. The proof is that the property now is rented to a single tenant for $3,600 per year, though the amount of the rental has temporarily been reduced to $2,850 per year. The tenant pays all upkeep and other charges except taxes and mortgage interest, which between them amount to about $2,400 per year. These figures leave only a nominal surplus on the present rate of rent actually paid but leaves a margin of over $1,000 on the basis of the leasehold terms.

The building is hemmed in between two tall loft buildings. It no longer has any value as plottage, therefore, but it does serve the

same use as is made of other property similarly situated; that is, it houses the incidental activities of businesses which can be carried on in the vicinity of large buildings, the population of which furnishes a steady source of custom for restaurants, personal-service trades, small shops, etc.

The history of the mortgage seems to indicate that the holder of it, even though it had for many months the power to foreclose, was content to let it run on because the interest was paid and the taxes were paid. That evidence of confidence in the property is a substantial circumstance in this proceeding. The fact that the mortgage has the excellent history which it has is another substantial circumstance. Here the stipulated rate of interest has been paid and the mortgage has always remained a first lien, since the taxes have been promptly paid. Taking into account the testimony concerning the property itself and the opinions expressed about it by the experts on both sides, the court is satisfied that there is no reasonable likelihood that when the holder of this mortgage is free to foreclose it there will result any deficiency judgment. Accordingly the court determines that no reserve is necessary for a possible claim for an unpaid portion of the mortgage debt in the event of future foreclosure.

Submit, on notice, decree reciting this determination and settling the account as filed.